UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Stephan Condodemetraky

     v.                                      Civil No. 20-cv-631-JD
                                                Opinion No. 2021 DNH 102
Gordon MacDonald, et al.


O R D E R

     Stephan Condodemetraky, proceeding pro se, brought this
suit alleging violations of the federal constitution and state
law against several New Hampshire officials and employees.[1]  The
defendants move to dismiss the First Amended Complaint.
Condodemetraky objects and moves for leave to file a proposed
Second Amended Complaint.  The defendants object to the proposed
amendment of the complaint.


I.   Motion to Dismiss

     In considering a motion to dismiss, the court asks whether
the plaintiffs have made allegations that are sufficient to
render their entitlement to relief plausible.  Manning v. Boston
Med. Ctr. Corp., 725 F.3d 34, 43 (1st Cir. 2013).  The court

---

[1] The defendants are Attorney General Gordon MacDonald;
Robert Quinn, Commissioner of Safety of the New Hampshire
Department of Safety; James Boffetti; John Garrigan; Gregory
Albert; David Hilts; Elizabeth Bielecki, Director of the
Division of Motor Vehicles; and Priscilla Vaughn, Supervisor at
the Department of Safety.

accepts all well-pleaded facts as true and draws all reasonable inferences in the non-moving party's favor. Hamann v. Carpenter, 937 F.3d 86, 88 (1st Cir. 2019). The court, however, disregards conclusory allegations that simply parrot the applicable legal standard. Manning, 725 F.3d at 43. To determine whether a complaint survives a motion to dismiss, the court should use its "judicial experience and common sense," but should also avoid disregarding a factual allegation merely because actual proof of the alleged facts is improbable. Id. Because Condodemetraky filed his complaint pro se, the court construes it liberally. Foss v. Marvic, Inc., 994 F.3d 57, 63 n.7 (1st Cir. 2021) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

A.    Background

Condodemetraky operated a business called "DustyOldCars.com" ("DOC") which dealt in buying, selling, repairing, and consigning cars. As suggested by its name, DOC's business focused on "inexpensive and materially problematic classic and antique vehicles . . . ." Doc. 11 ¶ 12. DOC's specialty was in cars worth less than $20,000, and nearly all cars sold by DOC required repair or restoration work to be in a condition saleable at a retail price.

In 2014, DOC began accepting vehicles on consignment.  DOC customers were required to sign a consignment agreement before DOC would accept a vehicle for consignment.  In 2015, DOC "realized" that it was losing money on restorations it had been performing on consigned vehicles.  Id. ¶ 20.  Despite significant growth in the inventory of the business, DOC determined that it needed to charge for repair and restoration work on consigned vehicles to remain solvent.  As a result, in 2015, DOC changed its "consignment agreement" to allow it to title consigned vehicles in its name and to make repairs to consigned cars as needed and at its sole discretion.

After DOC began obtaining titles for cars that were "consigned" to it and began charging consigners for repair and restoration work, consigners began making "significant complaints" to the New Hampshire Attorney General's office.  Id. ¶ 22.  The consigners alleged that DOC illegally took ownership of their cars and had overcharged them for the repair work or that DOC failed to complete the work.  DOC changed its consignment agreement to allow it to title consigned vehicles in its name and to "correct any items misrepresented by cosigner [sic] at the execution of this agreement."  Id. ¶ 23.

Nevertheless, "[s]ome consumers later loudly complained, despite having signed the documents allowing [DOC to take title], that the company had illegally taken ownership of their

3

vehicle, and obtained a NH Title in the company's name." Id.
¶ 24.  In October 2015, the New Hampshire Attorney General's
Office issued a subpoena requiring Condodemetraky to appear at
its offices.  Additional subpoenas were issued to DOC's
employees in April 2016.  In September and October 2016, a
Merrimack County grand jury issued subpoenas to DOC employees.

From June 2016 through December 2016, the DMV began
refusing to process requests by Condodemetraky and/or DOC to
obtain certificates of title in his or DOC's name.  DOC declared
bankruptcy in December 2016.

In May 2017, Condodemetraky was indicted for title fraud,
forgery, and witness tampering.  In June 2017, Condodemetraky
was indicted for theft by deception, in which the state alleged
that Condodemetraky misrepresented the sale price of vehicles to
lower the amount that he had to pay consignors.  In February
2018, Condodemetraky was found guilty of theft by deception.[2]

In November 2018, Condodemetraky was indicted for
securities fraud.  The state alleged that Condodemetraky misled
an investor, withheld information, and told the investor not to
speak with investigators when DOC's bankruptcy began.

---

[2] The New Hampshire Supreme Court affirmed Condodemetraky's
conviction for theft by deception.  State v. Condodemetraky,
2020 WL 6058582, at *2 (Sept. 21, 2020).

In November 2019, Condodemetraky was acquitted of the May 2017 title fraud, forgery, and witness tampering charges after a jury trial.  The charges for securities fraud have not been resolved.

Condodemetraky alleges in the complaint that the Attorney General's office knew about "credible exculpatory evidence that was presented in multiple depositions," that its witnesses had a motive to lie, and that its witnesses' stories did not make sense.  Id. ¶ 105.  Condodemetraky alleges that the "wrongful prosecution of the Plaintiff continues to this day in October of 2020."  Id. ¶ 121.

Liberally construed, the First Amended Complaint alleges the following claims:

- Count I, malicious prosecution (Fourth Amendment and state law);[3]
- Count II, violation of due process (New Hampshire constitution, the Fifth Amendment, and the Fourteenth Amendment);
- Count III, civil conspiracy to injure Condodemetraky's reputation, business operations, status in the community, and financial condition;
- Count IV, breach of contract;
- Count V, defamation;
- Count VI, intentional interference with business relationships; and

_____

[3] The First Amended Complaint is unclear about whether Condodemetraky alleges a malicious prosecution claim under the Fourth Amendment.  Because Condodemetraky proceeds pro se, the court liberally construes Count I to allege malicious prosecution claims under both New Hampshire state law and the Fourth Amendment.

- Count VII, negligent interference with prospective economic relations.

Condodemetraky requests money damages, attorneys' fees and costs, and "such other relief as this Court may deem right and just including injunctive and declaratory relief as may be required in the interest of justice." Id. at 41. Condodemetraky does not indicate what specific injunctive or declaratory relief he wants the court to order in his complaint.

B.  Discussion

The defendants move to dismiss on the ground that the court should abstain under Younger v. Harris, 401 U.S. 37 (1971), because of the ongoing state proceedings against Condodemetraky. The defendants also argue that Condodemetraky fails to allege cognizable claims in Counts I (malicious prosecution) and II (due process violation) and that the court should decline supplemental jurisdiction over Condodemetraky's state law claims.  Condodemetraky objects to dismissal.

1.  Younger Abstention

The defendants assert that, consistent with Younger, Condodemetraky's suit should be dismissed to the extent it constitutes an attempt to enjoin or interfere with the ongoing state prosecutions.  The defendants add that the court should also abstain from Condodemetraky's claims for damages because

awarding damages would be equivalent to a declaration that the defendants' conduct violated Condodemetraky's federal constitutional rights as part of an ongoing prosecution. Condodemetraky responds that his suit does not interfere with ongoing state prosecutions and that the defendants cannot use the fact that they have indicted him multiple times to avoid claims involving criminal charges for which he has been acquitted.

"The Younger doctrine reflects a 'longstanding public policy against federal court interference with state court proceedings,' and is based on two conceptual foundations." Mass. Delivery Ass'n v. Coakley, 671 F.3d 33, 40 (1st Cir. 2012) (quoting Younger, 401 U.S. at 43). "[I]t is based on a notion that 'courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied relief.'" Id. "[M]ore importantly, Younger rests upon basic notions of federalism and comity, and also on a related desire to prevent unnecessary duplication of legal proceedings." Id. To determine whether Younger applies, the court must ascertain whether the requested relief would interfere with an ongoing state judicial proceeding that implicates an important state interest and provides an opportunity for the federal plaintiff to advance his

constitutional challenge.  Id.; see also Middlesex Cnty. Ethics
Comm. v. Garden State Bar Assoc., 457 U.S. 423, 432 (1983).

Generally, Condodemetraky alleges that, in the course of
their investigation of him and his business, the defendants
engaged in various acts that violated his constitutional rights.
According to the complaint, the investigation led to three
separate criminal proceedings against Condodemetraky.
Condodemetraky was acquitted in one prosecution (for title
fraud, forgery, and witness tampering), he was convicted in
another (for theft by deception), and one prosecution (for
securities fraud) is ongoing.  While there is one prosecution
ongoing and one in which he was convicted, Condodemetraky states
in the First Amended Complaint that he "brings this pleading
regarding the charges that have been dismissed or [of] which he
has been acquitted.  The Plaintiff will amend in the future as
other charges are resolved in his favor."  Doc. 11 ¶ 159.[4]

Therefore, Condodemetraky's complaint and requests for
relief appear to be limited to the title fraud, forgery, and
witness tampering charges of which he was acquitted.  On the
other hand, the defendants argue that the facts behind

---

[4] Condodemetraky's statement that he intends to amend the
complaint in the future if other charges are resolved in his
favor does not mean he would necessarily be allowed to do so.
See Fed. R. Civ. P. 15(a)(2) (requiring the opposing party's
assent or the court's leave to amend a pleading when amendment
is unavailable as a matter of course).

Condodemetraky's claims involve the state's investigation, which implicates all three prosecutions.  For that reason, they assert that, in addition to rejecting any injunction that stops the ongoing prosecution, the court should "abstain from reaching Mr. Condodemetraky's damages claim under § 1983, as awarding Mr. Condodemetraky damages on that claim would be tantamount to declaring that the defendants' conduct in relation to the pending prosecutions violated Mr. Condodemetraky's federal constitutional rights."  Doc. 14-1 at 13.

To the extent that Condodemetraky seeks to enjoin or prevent his prosecution by the state on the remaining charges of securities fraud, which are ongoing, Younger bars that relief.  See Jackson v. Worcester Police Dep't., 2010 WL 4273821, at *2-*3 (D. Mass. Oct. 26, 2010) (dismissing case under Younger because Fourth and Fifth Amendment claims challenging police investigation tactics could be "understood as challenges to the legality of [the plaintiffs'] underlying arrests" relative to ongoing state prosecutions).  Additionally, under Heck v. Humphrey,[5] Condodemetraky cannot obtain money damages under § 1983 for an allegedly unconstitutional conviction or other harm where a judgment in his favor would imply that his

---

[5] The defendants did not raise Heck as a potential bar to Condodemetraky's complaint.  The court, however, can raise the issue sua sponte.  Shapard v. Attea, 2016 WL 5871360, at *4 (W.D.N.Y. Oct. 7, 2016).

conviction or sentence is invalid, unless he can demonstrate that the conviction has already been invalidated.  See 512 U.S. 477, 486-87 (1994); O'Brien v. Town of Bellingham, 943 F.3d 514, 528-29 (1st Cir. 2019).

Younger and Heck, however, do not bar Condodemetraky's complaint in its entirety because some of the theories of recovery alleged in Condodemetraky's complaint do not call into question the validity of the ongoing proceedings or his conviction.  For example, if Condodemetraky succeeded on his due process claim premised on the state's failure to process requests for certificates of title, it would not call into question the ongoing proceedings for securities fraud or his conviction for theft by deception.  Moreover, without further factual development of the grounds for the claims, it is unclear at this time whether or to what extent awarding damages or other relief to Condodemetraky would interfere with the ongoing state prosecution or undermine his conviction.  See Bey v. Sullivan, 2011 WL 2680730, at *2 (D. Mass. July 6, 2011) (declining, for the moment, to dismiss pro se complaint under Heck because "without further factual development, it cannot be determined definitively" whether it applies).

Nonetheless, as explained below, Condodemetraky's federal claims are not cognizable on other grounds, and the court declines to exercise supplemental jurisdiction over

Condodemetraky's state claims.  Accordingly, it is unnecessary
to parse out exactly which of Condodemetraky's claims might have
interfered with the ongoing state court prosecution if they had
been successful.  See Marshall v. Bristol Superior Court, 753
F.3d 10, 17 (1st Cir. 2014) (stating that there was no reason to
determine whether Younger abstention applied to claim that is
patently without merit); Amadi v. McManus, 2018 WL 5555062, at
*4 (D. Mass. Oct. 26, 2018) (dismissing claims for money damages
under Rule 12(b)(6) even though a stay of the claims would have
been necessary under Younger if no independent basis for
dismissal existed).

> 2. Additional Grounds for Dismissal

>> a. Eleventh Amendment

The defendants argue that Condodemetraky's claims for
damages under § 1983 and his state-law claims should be
dismissed to the extent they are brought against the defendants
in their official capacities due to sovereign immunity pursuant
to the Eleventh Amendment.  Condodemetraky did not respond to
this argument.

"The Judicial power of the United States shall not be
construed to extend to any suit in law or equity, commenced or
prosecuted against one of the United States by Citizens of
another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. amend. XI. "Absent an explicit waiver from the state, the Eleventh Amendment bars 'official capacity suits' against state actors in federal court unless the suit seeks prospective injunctive relief." Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (citing Rosie D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002)). Moreover, state-law claims brought in federal court against nonconsenting state actors are barred regardless of the relief sought. Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 540-41 (2002) (reaffirming that the Eleventh Amendment bars state law claims brought against nonconsenting state actors in federal court).

The Eleventh Amendment bars Condodemetraky's claims against the defendants in their official capacities for money damages for violations of the federal constitution (Count I, in part, and Count II) and his claims for any relief alleging violations of state law (Count I, in part, and Counts III through VII). See Raygor, 534 U.S. at 540-41; Caisse, 346 F.3d at 218; Coggeshall v. Mass. Bd. of Registration of Psychologists, 604 F.3d 658, 662 (1st Cir. 2010) ("To the extent that the members of the Board are sued in their official capacities, they stand in the shoes of the state and enjoy the same immunity as does the Board."). As to the exception for prospective injunctive relief, Condodemetraky does not ask for any specific injunctive relief nor identify in his objection to the motion to dismiss

what injunctive relief he would request that the court order.[6]
For those reasons, all defendants are dismissed to the extent
they are named in their official capacities.  The Attorney
General and Commissioner Quinn are named only in their official
capacities and are therefore dismissed as party defendants for
this reason.

      b.   <u>Count I (Fourth Amendment Malicious Prosecution)</u>

Next, the defendants from the Attorney General's office
argue that, to the extent they are named in their personal
capacities, they are entitled to absolute prosecutorial immunity
as to a claim for malicious prosecution under the Fourth
Amendment.  The defendants add that, to the extent
Condodemetraky's allegations of malicious prosecution are
premised on actions they took during the investigation,
Condodemetraky does not have a Fourth Amendment right not to be
investigated and that Condodemetraky has not alleged facts
showing that he was "seized", which is an element of a Fourth

---

[6] In his objection, Condodemetraky suggests that the court
should not dismiss his request for declaratory or injunctive
relief because the defendants "can be expected to repeatedly and
continually harass" him.  Doc. 19 ¶ 15.  As noted above,
however, <u>Younger</u> constrains the court's ability to halt an
ongoing state-court prosecution.  In any event, as discussed
below, Condodemetraky fails to state any federal claims upon
which relief could be granted, so he could not be granted
injunctive relief even if he had better articulated the
injunctive relief that he is seeking.

Amendment malicious prosecution claim. The defendants argue that, even if Condodemetraky had been seized, Condodemetraky premises his allegations on misconduct that occurred before the seizure rather than the seizure itself, so there was no Fourth Amendment violation.

Condodemetraky did not respond to the prosecutorial immunity argument. Instead, he contends that the defendants' malfeasance has been a continuing process, so it is not true that the alleged misconduct occurred only before his alleged seizure.[7] For that reason, he argues that he can bring a claim based on the investigation.

Under the Fourth Amendment, a plaintiff can succeed on a "malicious prosecution" theory if he demonstrates that the defendant law enforcement officers caused him to be seized pursuant to a legal process unsupported by probable cause and that criminal proceedings terminated in the plaintiff's favor.

_____

[7] Condodemetraky also asserts in his objection that Nashua police officers (who are not named as defendants in this case) seized several vehicles from him and that a warrant was not obtained for the seizure until after Condodemetraky demanded the vehicles back. Doc. 19 ¶ 34. This assertion was not included as an allegation in the First Amended Complaint and, in any event, it is not sufficient to remedy the flaws in his malicious prosecution claim. Condodemetraky also states that the defendants "took steps to prevent Plaintiff from obtaining title to his vehicles, effectively and unrightfully depriving him of ownership and consequently property." Id. ¶ 35. This assertion also does not support Condodemetraky's malicious prosecution claim under the Fourth Amendment.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 100-01 (1st Cir. 2013).
The first element requires the plaintiff to "demonstrate that
the actions or statements of law enforcement officers [that
resulted in his seizure] 'amounted to deliberate falsehood or
. . . reckless disregard for the truth.'" Hernandez–Cuevas v.
Taylor, 836 F.3d 116, 125 (1st Cir. 2016).[8]

In the First Amended Complaint, Condodemetraky alleges that
the defendants are liable for malicious prosecution because
their investigation was "crooked" and a "witch hunt" that
resulted in "the full destruction" of his business. Doc. 11
¶¶ 138, 141, 148. These conclusory allegations, however, are
not sufficient to state a claim for malicious prosecution under
the Fourth Amendment. Condodemetraky does not allege facts
showing that he was seized under the meaning of the Fourth
Amendment without probable cause or that any seizure that
occurred resulted from any defendant's action or statement that

---

[8] To the extent Condodemetraky's malicious prosecution claim
concerns the defendants' initiation of the state's prosecution
for title fraud, forgery, and witness tampering, the defendants
from the New Hampshire Attorney General's office are absolutely
immune in their individual capacities. See, e.g., Burns v.
Reed, 500 U.S. 478, 490-91 (1991) (reiterating that prosecutors
are absolutely immune from § 1983 liability in initiating and
presenting a state's criminal case as long as the conduct is
intimately associated with the judicial phase of the criminal
process); Filler v. Kellett, 859 F.3d 148, 153 (1st Cir. 2017).

was deliberately false or made with reckless disregard for the truth.

Condodemetraky alleges that he was arrested at some point during the investigation, but he does not say when he was arrested nor on what charge. He does not indicate whether a warrant was issued for the arrest. Condodemetraky does not connect the misconduct he has alleged about the investigation or subsequent prosecution with the arrest, nor does he indicate how any actions or statements made by the defendants with deliberate or reckless disregard for the truth resulted in that arrest. See Hernandez-Cuevas, 836 F.3d at 125. For those reasons, Count I is dismissed to the extent a Fourth Amendment malicious prosecution claim is alleged.[9]

c. Count II (Due Process Claims under Fifth and Fourteenth Amendments)

The defendants argue that the First Amended Complaint fails to state any due process claims on which relief can be granted. They contend that Condodemetraky's allegations about the state's investigation of him and his business do not support a due process claim because there is no constitutional due process right not to be investigated. The defendants also argue that

_____

[9] In Count I, Condodemetraky also raised a malicious prosecution claim under state law. The court addresses Condodemetraky's state law claims separately below.

Condodemetraky has not identified any protected interest in
which he holds a property right of which he was deprived without
due process.

Condodemetraky responds that the defendants' malfeasance
consonant with but extraneous to their investigation of him is
conduct that can "trigger Plaintiff's due process concerns."
Doc. 19 at 7. He contends that these actions – including
statements to the press and statements made to individuals
during the investigation – "ultimately acted as the catalyst
which forced Plaintiff into bankruptcy, depriving him of his
property interests and ultimately forcing the closure of his
business." Id.[10] He also argues that the defendants interfered
with his ability to receive titles for vehicles, which deprived
him of his ability to do business.

Generally, the due process guarantees of the Fifth and
Fourteenth Amendments require that a state provide a person
notice and an opportunity to be heard before it deprives that
person of a protected interest. Garcia-Gonzalez v. Puig-
Morales, 761 F.3d 81, 87-88 (1st Cir. 2014); Miller v. Town of
Wenham, Ma., 833 F.3d 46, 52 (1st Cir. 2016). For purposes of
whether the Fifth and Fourteenth Amendments provide those

---

[10] Condodemetraky also references the seizure of cars by the
Nashua police in support of his due process claim. That
allegation is not in the First Amended Complaint.

17

procedural guarantees, protected "[p]roperty interests are created and defined by state law." See Frank v. City of Manchester, No. 9-CV-389-PB, 2011 WL 3489888, at *3 (D.N.H. Aug. 10, 2011) (citing Leis v. Flynt, 439 U.S. 438, 441 (1979)).  A property interest exists only when a person has a legitimate entitlement to the interest.  See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) ("[A] person clearly must have more than an abstract need or desire for [the benefit].  He must have more than a unilateral expectation of it.").

The First Amended Complaint fails to state a claim for a procedural due process violation.  The Fifth and Fourteenth Amendments do not guarantee due process relative to the wrongful acts alleged by Condodemetraky, such as "inspiring" individuals to file civil suits against Condodemetraky or his business or speaking to the press about the ongoing investigation.  See Paul v. Davis, 424 U.S. 693, 711-12 (1976) (holding that conduct by a state official that causes reputational harm to an individual does not implicate a protected property or liberty interest); Aponte v. Calderon, 284 F.3d 184, 195-96 (1st Cir. 2002) ("Reputational harms must be attached to some other alteration in status in order to raise a valid due process claim.").

Condodemetraky also alleges that the defendants refused to process his applications to obtain certificates of title between June 2016 and December 2016, prior to his indictment for title

fraud in May 2017.  State law, however, does not support a
finding that Condodemetraky had a property interest in receiving
certificates of title for consigned vehicles.  Under New
Hampshire state law, the Department of Motor Vehicles has
discretion to refuse to issue a certificate of title "if it has
reasonable grounds to believe that . . . [t]he applicant is not
the owner of the vehicle" or "[t]he application contains a false
or fraudulent statement."  RSA 261:11.  The Department of Motor
Vehicles also has discretion, if it is not satisfied as to the
ownership of the vehicle, to withhold issuing a certificate of
title until the applicant "presents documents reasonably
sufficient to satisfy the director as to the applicant's
ownership of the vehicle and that there are no undisclosed
security interests in it," or to issue title but require the
applicant to a pay a bond equal to one plus one-half of the
value of the vehicle.  RSA 261:10.

Condodemetraky was under investigation for title fraud in
connection with his business during the time period when the DMV
is alleged to have withheld certificates of title, and, under
New Hampshire law, the DMV is vested with discretion to withhold
or deny a person a certificate of title under those
circumstances.  Therefore, Condodemetraky has not shown that he
was entitled to obtain certificates of title from the state
under the circumstances he has alleged.  Chongris v. Bd. of

Appeals, 811 F.2d 36, 43 (1st Cir. 1987) (holding that applicant
for "common victualler's license" had no protectable interest
where statute stated licensing authorities "may" grant licenses
and that authorities had discretion to determine whether license
was warranted by "the public good").  For the foregoing reasons,
Count II, to the extent a federal claim for a due process
violation under the Fifth Amendment or Fourteenth Amendment is
alleged, is dismissed.

### 3.    Supplemental Jurisdiction

The defendants argue that, if the court dismisses
Condodemetraky's federal claims, which it has, the court should
decline to exercise supplemental jurisdiction over the remaining
state law claims.  See 28 U.S.C. § 1367(c) ("The district courts
may decline to exercise supplemental jurisdiction over a claim .
. . if . . . the district court has dismissed all claims over
which is has original jurisdiction.").  While a district court,
in some circumstances, may use its discretion to exercise
supplemental jurisdiction even after the basis for its original
jurisdiction has disappeared, it is prudent for a court to
decline to exercise supplemental jurisdiction when it has
dismissed all original jurisdiction claims during the early
stages of a case.  See 28 U.S.C. § 1367(c)(3); Rossi v. Gemma,
489 F.3d 26, 38-39 (1st Cir. 2007) ("As a general principle, the

unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims."). Because the court has dismissed all claims over which it has original jurisdiction during the early stages of this case, the court declines to exercise supplemental jurisdiction over the remaining state law claims asserted by Condodemetraky.

II. <u>Motion to Amend Complaint</u>[11]

In addition to opposing the defendants' motion to dismiss the First Amended Complaint, Condodemetraky filed a separate motion to amend his First Amended Complaint and submitted a proposed Second Amended Complaint. The defendants object to amendment of the complaint on the grounds that amendment would be prejudicial to them and that the Second Amended Complaint does not cure the deficiencies of the First Amended Complaint such that amendment would be futile.

After a party has used its right to amend a pleading "once as a matter of course" as permitted in Federal Rule of Civil Procedure 15(a)(1), "a party may amend its pleading only with

---

[11] In some cases, the court will consider a motion to amend before deciding a pending motion to dismiss. Here, however, because of the similarity between the proposed Second Amended Complaint and the First Amended Complaint, it was more appropriate to consider the motion to amend subsequent to deciding the motion to dismiss.

the opposing party's written consent or the court's leave.  The

court should freely give leave when justice so requires."  Fed.

R. Civ. P. 15(a)(2); see also LR 15.1(a).  Futility – meaning

that the proposed amended complaint fails to state a claim – is

a sufficient reason to deny amendment under Rule 15(a)(2).

Sykes v. RBS Citizens, N.A., 2 F. Supp. 3d 128, 133 (D.N.H.

2014); see also Nikitine v. Wilmington Tr. Co., 715 F.3d 388,

390 (1st Cir. 2013).[12]

The legal bases for the claims alleged in the proposed

Second Amended Complaint are the same as the legal bases for the

claims alleged in the First Amended Complaint.  The facts

alleged in the Second Amended Complaint are also largely the

same as the facts alleged in the First Amended Complaint.  None

of the changes in the proposed Second Amended Complaint would

cure the defects of the First Amended Complaint already

discussed.  Therefore, amendment would be futile.

For example, as to Count I, Condodemetraky clarifies in his

Second Amended Complaint that his claim is brought under both

federal and state standards for malicious prosecution.  As

explained above, however, the court construed the First Amended

Complaint to include a federal malicious prosecution claim under

---

[12] Condodemetraky has already amended his complaint once and
the defendants did not assent to a second amendment.  See doc.
11; doc. 20.  Therefore, Condodemetraky requires the court's
leave to amend the complaint.  Fed. R. Civ. P. 15(a)(2).

the Fourth Amendment, but the facts alleged are insufficient to state a plausible claim for relief. Condodemetraky adds allegations that the defendants acted to harm a company that his parents own, Tradz LLC, but Condodemetraky lacks standing to raise claims based on injuries suffered by Tradz LLC. Fideicomiso De La Tierra Del Cano Martin Pena v. Fortuno, 604 F.3d 7, 16 (1st Cir. 2010) (stating that, to have constitutional standing to sue, the plaintiff must have "suffered an injury in fact 'causally connected to the challenged conduct' and capable of being remedied through suit.").

Similarly, as to Count II, Condodemetraky expands his allegations of due process violations to include the DMV's refusal to issue certificates of title for his parents' business, Tradz LLC. As noted, Condodemetraky lacks standing to raise claims based on alleged injuries to Tradz LLC rather than to himself. See id. The proposed Second Amended Complaint also states that "Plaintiff's property was unlawfully seized by Defendants" and that "[h]is vehicles were seized without due process." Doc. 20-1 ¶ 143. These are conclusory allegations and do not meet the standard necessary to state a claim for relief under Rule 12(b)(6). See Manning, 725 F.3d at 43.

Further, the proposed Second Amended Complaint does not add new federal claims that were not considered as to the First Amended Complaint. Accordingly, the circumstances that compel

23

the court to decline to exercise supplemental jurisdiction over Condodemetraky's state law claims would be as applicable to the proposed Second Amended Complaint as to the First Amended Complaint. For those reasons, the proposed Second Amended Complaint is futile, and the motion to amend is denied.

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss (doc. no. 14) is granted. Condodemetraky's motion for leave to file a Second Amended Complaint (doc. no. 20) is denied. The case is dismissed.

The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.


                              Joseph A. DiClerico, Jr.
                              United States District Judge


June 28, 2021

cc:  Stephen Condodemetraky, pro se
     Counsel of Record.